Marshall Samuel Sanders
1621 Kensing Lane
Santa Ana, CA 92705-3074
Telephone: (714) 665-8012
Facsimile: (714) 665-8012
E-mail: marshallssanders@yahoo.com



**FILED**

**JUL -1 2015**

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Marshall Samuel Sanders, In Pro Per

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br><br>Marshall Samuel Sanders,<br><br>                    Debtor. | Case No.: 8:15-bk-13011-ES<br><br>EMERGENCY EX PARTE MOTION TO STRIKE ANY AND ALL OPPOSITION TO DEBTOR'S MOTION TO IMPOSE STAY AS TIME-BARRED BY THIS COURT'S OWN ORDER SETTING A DEADLINE FOR SUCH AN OPPOSITION, AND THAT DEADLINE HAS BEEN IGNORED; REQUEST FOR SANCTIONS; AND REQUEST FOR JUDICIAL NOTICE OF DEBTOR'S FEBRUARY 17, 2010 EXERCISE OF HIS TILA RIGHT OF RESCISSION, AND BY THAT TILA RESCISSION, ***BY OPERATION OF LAW***, THE NOTE AND DEED OF TRUST BECAME "VOID" FEBRUARY 17, 2010 (JESINOSKI, 574 US ___ (2015), THUS "OPPOSITION" LACKS STANDING TO UTTER "ANYTHING" IN REGARD TO THE INSTANT BANKRUPTCY, FOR THERE IS NO LONGER IN EXISTENCE A DEED OF TRUST OR A NOTE ENCUMBERING DEBTOR'S HOME. |

Debtor respectfully petitions the Court to Strike "Opposition" to Debtor's motion to impose stay.

Attached Exhibit "A" is the Court's own ORDER clearly showing a deadline of June 26, 2015 for

any opposition to Debtor's motion to impose stay. On Monday, June 29, 2015 (see Exhibit "D"),

upon checking Debtor's roadside mailbox, a FedEx package was discovered inside of the mailbox.

For FedEx to have opened Debtor's mailbox was in and of itself a criminal offense according to the

United States Postal Service, for they have no right or authority to tamper with property of the U.S.

government, which includes Debtor's mailbox, but we'll take up that issue another time. The

"package" purports to be a time-barred "opposition" from purported third-party officious

intermeddlers in Debtor's bankruptcy claiming to be Creditors, when in fact: (1) the "package"

containing an opposition to Debtor's motion to impose stay is time-barred; (2) the "Creditors" lack

standing (the Note and Deed of Trust that "creditors" purport to have some connection to, are void

(Jesinoski, 574 US _ (2015); (3) Exhibit "C," previously provided to the Court in Debtor's

Application for Shortened Time and Motion to Impose Stay, is hereby and herewith proffered again

to the Court for Judicial Notice, to tell the whole world that this Debtor's home and the Note and

Deed of Trust, are "off limits" to any and all challenges from purported "creditors" because there no

longer exists a Note and Deed of Trust according to the Supreme Court of the United States, and

there has NOT BEEN in existence a Note and Deed of Trust that these "creditors" claim to have an

interest in, but do not, for it is void, since February 17, 2010, more than five (5) years ago; and

finally, (4) for all the above reasons, notably fraud upon this Court by "creditors" that are mere

officious intermeddlers, and that have filed an "opposition" to Debtor's motion to impose stay,

sanctions are in order. These non-creditor fraudsters are attempting to victimize this innocent Debtor,

dupe this Court into accepting these "creditors" when there is no "debt" in existence. These

"creditors" are committing a criminal act, and they are fully aware of it, as is their attorney, Conrad

Sison, Locke Lord. Sanctions are not only called for but also mandated by the instant fraud upon the

court. For the opposition to Debtor has had actual notice of Debtor's exercise of his Truth-in-Lending

MOTION TO STRIKE

Act ("TILA") rescission since February 17, 2010, yet had continued to commit fraud by faking some

interest in recorded instruments that the U.S. Supreme Court has already ruled under *Jesinoski*, are

"VOID," and have been void for more than five (5) years running. This is not just a fraud upon this

Court, this is a criminal act and enterprise making a concerted effort to exercise rights as a "creditor"

in a lawful bankruptcy, when indeed, these opposers are fraudsters impacting this Court in a manner

that is injurious to the lawful exercise of Debtor's right to file bankruptcy, without false claims being

"considered" or "entertained" by the Court, particularly where as here, parties that are not only not

creditors but lack standing, are opposing Debtor's lawful exercise of his right to request that the

Court impose stay.

Debtor requests that the Court exercise the maximum penalties in terms of monetary

sanctions, and imprisonment, against the attorney(s) actually representing or purporting to represent,

the fake and phony "creditors" that have filed the instant opposition (late and time-barred by previous

ORDER of this Court), as outrageous, beyond all bounds, and because its effect upon the Court and

upon the Debtor, was committed with malice aforethought, knowing that the U. S. Supreme Court,

TILA, Regulation Z, the Consumer Financial Protection Bureau ("CFPB"), and a plethora of Federal

and State lawsuits against these exact same individuals and companies, has repeatedly shown that

they have come forward in cases just like this one here of Debtor's, and proffered documents and put

forth opposition, where they lacked standing, and knew they lacked standing, had no basis to suggest

that they are or ever were, "creditors," and yet, in spite of everything, attempted to foreclose on real

property with no enforceable lien. Such is precisely the case here, and for this reason, amongst others,

the harshest possible sanctions ought to be meted out against the attorney(s) for these fake "creditors"

and against the "creditors" themselves, to dissuade these fakes and phonies from foisting fake,

fabricated, and forged documents, and even, shamefully, duping Courts like this one, to take Judicial

1  Notice of documents purporting to authenticate security interests when in fact there never has been a

2  security interest from the beginning. Courts like the instant one have been victimized as much as

3  Debtor herein. This Court has become a "tool" of fraudsters, like the instant fraudsters that put forth

4  the "late" opposition to Debtor's motion to impose stay, and if Debtor did not complain, as he is

5  doing now, another Court would bless another illegal foreclosure with its foundation a void Deed of

6  Trust, where as here, the Deed of Trust is void, regardless of the fact that it is still of record, falsely

7  encumbering Debtor's title to his family home, injuring Debtor, and forcing Debtor, as here, to file

8  the instant bankruptcy, one of many in a too long saga of fighting the too-big-to-fail too-big-to-jail

9  banks and banksters, respectively. Debtor prays that this Court take a stand, stand with the U.S.

10 Supreme Court in its *Jesinoski* decision, find that Debtor's TILA rescission has rendered any interest

11 that the "opposition" claims in Debtor's family home, void by operation of law, just as SCOTUS did

12 in the *Jesinoski* case, and sanction and order imprisonment of the officers of the companies and their

13 attorney(s) that have duped this Court and injured Debtor by attempting to "steal" Debtor's family

14 home, by illegally foreclosing, attempting to auction Debtor's home without any lawful basis

15 whatsoever, and worse yet, knowing that they never had a lawful basis to foreclose. Debtor charges

16 those that have filed ("late") opposing Debtor's motion to impose stay, with Racketeer and Corrupt

17 Organizations Act ("RICO") violations, the same as an uncountable number of others have already

18 done in both State and Federal courts nationwide, for these exact same acts and practices, of illegally

19 foreclosing upon "interests" founded upon forged, fabricated, and false documents, with courts

20 duplicitous in accepting those same proffered "documents" as if they are genuine, when they are not,

21 but instead are bogus, and where TILA rescission has rendered Notes and Deeds of Trust or

22 Mortgages, void, yet those same courts, some of them, have had a blind eye to this perversion of

23 justice calling itself law while not even upholding the law, and in some instances, giving the nose up

to SCOTUS. Debtor trusts that this Court will side with SCOTUS, and not force this Debtor to seek

Certification of an Interlocutory Appeal to the Ninth Circuit on precisely this issue of Debtor's

exercise of his TILA right of rescission and the fact that at the moment Debtor dropped that

rescission in his mailbox, the Note and Deed of Trust were void by operation of law.

Nothing more needs to be done. This case is over in so far as "any" party enforcing a security interest

in any of Debtor's real property that by operation of law is void. If the Deed of Trust is void then

there is nothing to foreclose on. Yet that is why Debtor is here now back again, exceedingly

reluctantly, in bankruptcy, because officious intermeddlers, fraudsters, criminals that are knowingly

committing a crime, are continuously attempting to illegally foreclose and thus "steal" Debtor's

family home, thumbing their collective noses at the Supreme Court of the United States' *Jesinoski*

decision (attached as Exhibit "B").


DATED: July 1, 2015

Marshall Samuel Sanders, Debtor

In Pro Per

*Exhibit "A"*

|  | FOR COURT USE ONLY |
|---|---|
|  | **FILED & ENTERED**<br><br>JUN 16 2015<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY duarte    DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA –*SANTA ANA* DIVISION**

| In re:<br><br>MARSHALL SAMUEL SANDERS | CASE NO.: 8:15-BK-13011-ES<br><br>CHAPTER: 13 |
|---|---|
| | **ORDER:**<br><br>☒ **GRANTING APPLICATION AND SETTING HEARING ON SHORTENED NOTICE**<br><br>☐ **DENYING APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE**<br>**[LBR 9075-1(b)]** |
| Debtor(s). | |

**Movant** (*name*):  Debtor

1. Movant filed the following motion together with supporting declarations and (if any) supporting documents:

    a. *Title of motion*: Notice of Motion and Motion in Individual Case for Order Imposing a Stay or Continuing the Automatic Stay as the Court Deems Appropriate

    b. *Date of filing of motion*: June 16, 2015

2. Pursuant to LBR 9075-1(b), movant also filed an Application for Order Setting Hearing on Shortened Notice (Application) together with supporting declaration(s):

    *Date of filing of Application*: June 16, 2015

3. Based upon the court's review of the application, it is ordered that:

    a. ☐ The Application is denied.  The motion may be brought on regular notice pursuant to LBRs.

    b. ☒ The Application is granted, and it is further ordered that:

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                                          Page 1                        **F 9075-1.1.ORDER.SHORT.NOTICE**

(1) ☒  A hearing on the motion will take place as follows:

| | |
|---|---|
| **Hearing date: July 7, 2015** | **Place:** |
| **Time:  9:30 a.m.** | ☐ **255 East Temple Street, Los Angeles, CA 90012** |
| **Courtroom: 5A** | ☐ **21041 Burbank Boulevard, Woodland Hills, CA 91367** |
| | ☐ **3420 Twelfth Street, Riverside, CA 92501** |
| | ☒ **411 West Fourth Street, Santa Ana, CA 92701** |
| | ☐ **1415 State Street, Santa Barbara, CA 93101** |

(2) ☐  No later than the deadlines given, **telephonic notice** of the hearing must be provided to all persons/entities listed:

| | |
|---|---|
| (A) _Deadlines:_ | (B) _Persons/entities to be provided with telephonic notice:_ |
| Date: | |
| Time: | |
| | ☐  See attached page |
| | (C) _Telephonic notice is also required upon_ the United States trustee |

(3) ☒  No later than the deadlines given, **written notice of the hearing, a copy of this order, and a copy of the motion, declarations, and supporting documents (if any)** must be served upon all persons/entities listed using:

      ☒  one of the methods checked      ☐  all of the methods checked

(A) ☒ Personal Delivery  ☒ Overnight Mail  ☐ First class mail  ☒ Facsimile*  ☒ Email*

| | |
|---|---|
| (B) _Deadlines:_ | (C) _Persons/entities to be served with written notice and a copy of this order:_ |
| **Date: June 19, 2015** | |
| | **Secured Creditors and Chapter 13 Trustee** |

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(4) ☒ No later than the deadlines given, **written notice of the hearing, a copy of this order, and a copy of the motion, declarations, and supporting documents (if any)** must be served upon all persons/entities listed using:

☒ one of the methods checked          ☐ all of the methods checked

(A) ☐ Personal Delivery  ☐ Overnight Mail  ☒ First Class Mail  ☐ Facsimile*  ☐ Email*

| (B) _Deadlines:_ | (C) _Persons/entities to be served with motion, declarations, supporting documents:_ |
|---|---|
| **Date: June 19, 2015** | **All other creditors** |
| | (D) _Service is also required upon_:<br>-- United States trustee _(no electronic service permitted)_<br>-- Judge's copy personally delivered to chambers<br>   (_see Court Manual for address_) |

(5) ☒ Regarding **opposition to the motion**

☐ opposition to the motion may be made **orally** at the hearing

☒ no later than the deadlines given, **written opposition to the motion** must be filed with the court and served upon all persons/entities listed using:  ☒ one of the methods checked  ☐ all of the methods checked

(A) ☒ Personal Delivery  ☒ Overnight Mail  ☐ First Class Mail  ☒ Facsimile*  ☒ Email*

| (B) _Deadlines:_ | (C) _Persons/entities to be served with written opposition to the motion:_ |
|---|---|
| **Date: June 26, 2015** | -- **movant's attorney (or movant, if movant is not represented by an attorney)** |
| | (D) _Service is also required upon_:<br>-- United States trustee (_electronic service is not permitted_)<br>-- Judge's copy personally delivered to chambers<br>   (_see Court Manual for address_) |

(6) ☒ Regarding a **reply to an opposition:**

☐ a reply to opposition may be made **orally** at the hearing.

☒ no later than the deadlines given, a **written reply to an opposition** must be filed with the court and served on all persons/entities listed using:  ☒ one of the methods checked  ☐ all of the methods checked

(A) ☒ Personal Delivery  ☒ Overnight Mail  ☐ First Class Mail  ☒ Facsimile*  ☒ Email*

---

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                                Page 3                         F 9075-1.1.ORDER.SHORT.NOTICE

(B) _Deadlines:_
   **Date: July 2, 2015**

(C) _Persons/entities to be served with written reply to opposition:_
   **-- All persons/entities who filed a written opposition**

(D) _Service is also required upon:_
   -- United States trustee _(electronic service is not permitted)_
   -- Judge's Copy personally delivered to chambers
      _(see Court Manual for address)_

(7) ☐ Other requirements:

(8) ☒ No later than the deadlines given, movant must file a **Declaration of Notice and Service** establishing that telephonic notice, written notice, and service of the motion and this order was completed as set forth above, and a **judge's copy** of the Declaration of Notice and Service must be personally delivered to the judge's chambers:

☒ at least 2 days before the hearing.

☐ no later than:    Date:              Time:

\* Service by electronic means (facsimile or email) requires compliance with F.R.Civ.P. 5(b)(2)(E).

### ###

Date: June 16, 2015

_Erithe A. Smith_
Erithe Smith
United States Bankruptcy Judge

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2013                          Page 4                    **F 9075-1.1.ORDER.SHORT.NOTICE**

*Exhibit B'1*

(Slip Opinion)          OCTOBER TERM, 2014          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JESINOSKI ET UX. *v.* COUNTRYWIDE HOME LOANS, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 13–684.   Argued November 4, 2014—Decided January 13, 2015

Exactly three years after borrowing money from respondent Country-
wide Home Loans, Inc., to refinance their home mortgage, petitioners
Larry and Cheryle Jesinoski sent Countrywide and respondent Bank
of America Home Loans, which had acquired Countrywide, a letter
purporting to rescind the transaction. Bank of America replied, re-
fusing to acknowledge the rescission's validity. One year and one day
later, the Jesinoskis filed suit in federal court, seeking a declaration
of rescission and damages. The District Court entered judgment on
the pleadings for respondents, concluding that a borrower can exer-
cise the Truth in Lending Act's right to rescind a loan, see 15 U. S. C.
§1635(a), (f), only by filing a lawsuit within three years of the date
the loan was consummated. The Jesinoskis' complaint, filed four
years and one day after the loan's consummation, was ineffective.
The Eighth Circuit affirmed.

*Held:* A borrower exercising his right to rescind under the Act need only
provide written notice to his lender within the 3-year period, not file
suit within that period. Section 1635(a)'s unequivocal terms—a bor-
rower "shall have the right to rescind . . . *by notifying the creditor . . .
of his intention to do so*" (emphasis added)—leave no doubt that re-
scission is effected when the borrower notifies the creditor of his in-
tention to rescind. This conclusion is not altered by §1635(f), which
states *when* the right to rescind must be exercised, but says nothing
about *how* that right is exercised. Nor does §1635(g)—which states
that "in addition to rescission the court may award relief . . . not re-
lating to the right to rescind"—support respondents' view that rescis-
sion is necessarily a consequence of judicial action. And the fact that
the Act modified the common-law condition precedent to rescission at

2        JESINOSKI *v.* COUNTRYWIDE HOME LOANS, INC.

Syllabus

law, see §1635(b), hardly implies that the Act thereby codified rescission in equity.  Pp. 2–5.

729 F. 3d 1092, reversed and remanded.

SCALIA, J., delivered the opinion for a unanimous Court.

Cite as: 574 U. S. ____ (2015)            1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–684

## LARRY D. JESINOSKI, ET UX., PETITIONERS *v.* COUNTRYWIDE HOME LOANS, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[January 13, 2015]

JUSTICE SCALIA delivered the opinion of the Court.

The Truth in Lending Act gives borrowers the right to
rescind certain loans for up to three years after the trans-
action is consummated.  The question presented is whether
a borrower exercises this right by providing written no-
tice to his lender, or whether he must also file a lawsuit
before the 3-year period elapses.

On February 23, 2007, petitioners Larry and Cheryle
Jesinoski refinanced the mortgage on their home by bor-
rowing $611,000 from respondent Countrywide Home
Loans, Inc.  Exactly three years later, on February 23,
2010, the Jesinoskis mailed respondents a letter purport-
ing to rescind the loan.  Respondent Bank of America
Home Loans replied on March 12, 2010, refusing to
acknowledge the validity of the rescission.  On February
24, 2011, the Jesinoskis filed suit in Federal District Court
seeking a declaration of rescission and damages.

Respondents moved for judgment on the pleadings,
which the District Court granted.  The court concluded
that the Act requires a borrower seeking rescission to file
a lawsuit within three years of the transaction's consum-

mation.  Although the Jesinoskis notified respondents of
their intention to rescind within that time, they did not
file their first complaint until four years and one day after
the loan's consummation.  2012 WL 1365751, *3 (D Minn.,
Apr. 19, 2012).  The Eighth Circuit affirmed.  729 F. 3d
1092, 1093 (2013) (*per curiam*).

Congress passed the Truth in Lending Act, 82 Stat. 146,
as amended, to help consumers "avoid the uninformed use
of credit, and to protect the consumer against inaccurate
and unfair credit billing."  15 U. S. C. §1601(a).  To this
end, the Act grants borrowers the right to rescind a loan
"until midnight of the third business day following the
consummation of the transaction or the delivery of the
[disclosures required by the Act], whichever is later, by
notifying the creditor, in accordance with regulations of
the [Federal Reserve] Board, of his intention to do so."
§1635(a) (2006 ed.).*  This regime grants borrowers an
unconditional right to rescind for three days, after which
they may rescind only if the lender failed to satisfy the
Act's disclosure requirements.  But this conditional right
to rescind does not last forever.  Even if a lender *never*
makes the required disclosures, the "right of rescission
shall expire three years after the date of consummation of
the transaction or upon the sale of the property, whichever
comes first."  §1635(f).  The Eighth Circuit's affirmance in
the present case rested upon its holding in *Keiran* v. *Home
Capital, Inc.*, 720 F. 3d 721, 727–728 (2013) that, unless a
borrower has filed a suit for rescission within three years
of the transaction's consummation, §1635(f) extinguishes
the right to rescind and bars relief.

That was error.  Section 1635(a) explains in unequivocal

—————————

*Following the events in this case, Congress transferred the author-
ity to promulgate rules implementing the Act to the Consumer Finance
Protection Bureau.  See Dodd-Frank Wall Street Reform and Consumer
Protection Act, §§1061(b)(1), 1100A(2), 1100H, 124 Stat. 2036, 2107,
2113.

Opinion of the Court

terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years.

Nothing in §1635(f) changes this conclusion. Although §1635(f) tells us *when* the right to rescind must be exercised, it says nothing about *how* that right is exercised. Our observation in *Beach* v. *Ocwen Fed. Bank*, 523 U. S. 410, 417 (1998), that §1635(f) "govern[s] the life of the underlying right" is beside the point. That case concerned a borrower's attempt to rescind in the course of a foreclosure proceeding initiated six years after the loan's consummation. We concluded only that there was "no federal right to rescind, defensively or otherwise, after the 3-year period of §1635(f) has run," *id.*, at 419, not that there was no rescission until a suit is filed.

Respondents do not dispute that §1635(a) requires only written notice of rescission. Indeed, they concede that written notice suffices to rescind a loan within the first three days after the transaction is consummated. They further concede that written notice suffices after that period if the parties agree that the lender failed to make the required disclosures. Respondents argue, however, that if the parties dispute the adequacy of the disclosures—and thus the continued availability of the right to rescind—then written notice *does not* suffice.

Section 1635(a) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter. In an effort to sidestep this problem, respondents point to a neighboring

Opinion of the Court

provision, §1635(g), which they believe provides support
for their interpretation of the Act. Section 1635(g) states
merely that, "[i]n any action in which it is determined that
a creditor has violated this section, in addition to rescis-
sion the court may award relief under section 1640 of this
title for violations of this subchapter not relating to the
right to rescind." Respondents argue that the phrase
"award relief" "in addition to rescission" confirms that
rescission is a consequence of judicial action. But the fact
that it can be a consequence of judicial action when
§1635(g) is triggered in no way suggests that it can *only*
follow from such action. The Act contemplates various
situations in which the question of a lender's compliance
with the Act's disclosure requirements may arise in a
lawsuit—for example, a lender's foreclosure action in
which the borrower raises inadequate disclosure as an
affirmative defense. Section 1635(g) makes clear that a
court may not only award rescission and thereby relieve
the borrower of his financial obligation to the lender, but
may also grant any of the remedies available under §1640
(including statutory damages). It has no bearing upon
whether and how borrower-rescission under §1635(a) may
occur.

Finally, respondents invoke the common law. It is true
that rescission traditionally required either that the re-
scinding party return what he received before a rescission
could be effected (rescission at law), or else that a court
affirmatively decree rescission (rescission in equity). 2 D.
Dobbs, Law of Remedies §9.3(3), pp. 585–586 (2d ed.
1993). It is also true that the Act disclaims the common-
law condition precedent to rescission at law that the bor-
rower tender the proceeds received under the transaction.
15 U. S. C. §1635(b). But the negation of rescission-at-
law's tender requirement hardly implies that the Act
codifies rescission in equity. Nothing in our jurisprudence,
and no tool of statutory interpretation, requires that a

Opinion of the Court

congressional Act must be construed as implementing its closest common-law analogue. Cf. *Astoria Fed. Sav. & Loan Assn.* v. *Solimino,* 501 U. S. 104, 108–109 (1991). The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice.

\*      \*      \*

The Jesinoskis mailed respondents written notice of their intention to rescind within three years of their loan's consummation. Because this is all that a borrower must do in order to exercise his right to rescind under the Act, the court below erred in dismissing the complaint. Accordingly, we reverse the judgment of the Eighth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

*Exhibit*

1621 Kensing Lane
Santa Ana, CA 92705-3074

February 17, 2010

Countrywide Home Loans, Inc.
(Now known as: Bank of America)
400 Countrywide Way
**Simi Valley**, CA 93065-6298

Countrywide Bank, N.A.
1199 North Fairfax St., Ste. 500
Alexandria, VA 22314

Bank of America
Home Retention Department
475 Crosspoint Parkway
NY2-002-01-17
Getzville, NY 14068-1609

ReconTrust Company, N.A.
A Wholly-owned subsidiary of
Bank of America
1800 Tapo Canyon Rd.
CA6-914-01-94
**Simi Valley**, CA 93063-6712

ReconTrust Company, N.A.
225 West Hillcrest Drive
MSN TO-02
Thousand Oaks, CA 91360-7883

Wells Fargo
Wells Fargo Bank, N.A.,
As Trustee for Harborview Mortgage Loan,
Trust Mortgage Loan Pass-through Certificates, Series 2007-1
C/o BAC Home Loans Servicing, LP
Foreclosure Department
400 Countrywide Way, SV-35
**Simi Valley**, CA 93065-6298

MERS
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48051-2026

1

**Re:**     **DEMAND & NOTICE OF RESCISSION**
Property: 1621 Kensing Lane, Santa Ana, CA 92705-3074
Originating Loan No. 154127473 (Countrywide)

Dear Sir(s) and or Madame(s):

This correspondence will serve to memorialize my (hereinafter, "Borrower") dispute with the above-referenced mortgage loan by, through, originated, serviced or otherwise now in the hands of your office or under your dominion and control, and as Notice of my Intent to file legal action pursuant to the California Code of Civil Procedure within 30 days from this date.

Further, this correspondence will serve as notice to rescind the above-referenced mortgage loan based on your violations of each of the following federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"), California Unfair/Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code §1688, and others.

Please be advised that the security interest in the above-referenced property is now void per this notice and you have 20 days to return all payments made on this loan and to do your part to terminate the security interest in the home. Upon compliance with the above, I, or my representative, will be contacting you to discuss the tender of the reduced payoff amount subject to offset for all damages and costs.

## VIOLATIONS OF TRUTH IN LENDING ACT (TILA)

The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

- Did not deliver good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application.[2]
- Did not provide 2 copies of the completed Right to Cancel.[3]
- The Truth in Lending Disclosure was not provided.[4]

---

[1] *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) and *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).
[2] 12 C.F.R. §§ 226.19(a)
[3] 12 C.F.R. §§ 226.23(b)
[4] 12 C.F.R. §§ 226.17, 226.18

- Hazard insurance disclosure was not provided.[5]

- "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) was not provided within 3 days of application.[6]

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

There is no evidence to confirm that the borrower received all of the disclosures mandated by law. The transfer servicing disclosure special information booklet and affiliated business agreement disclosures do not appear to have been received by the borrower.

- Did not disclose all affiliated business arrangements.[7]
- HUD-1 was not provided at closing (or 1 day before if requested) and accurate.[8]
- Transfer servicing disclosure was not provided at or prior to closing.[9]

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE[10], BREACH OF FIDUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

**I.  Underwriting Standards Were Ignored; Borrower Qualification based on Value of Collateral, rather than Ability to Repay the Loan**

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by

---

[5] 12 C.F.R. § 226.4(d)(2)
[6] 12 C.F.R. § 226.19(b)
[7] 24 C.F.R. § 3500.15
[8] 24 C.F.R. § 3500.8(b)
[9] 24 C.F.R. § 3500.21
[10] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code: Violations of specific code sections 10240-10248.3; 10241.

3

getting pay stubs, 1040s, W-2's, and a Verification of Employment and Income on the borrowers.

      If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

      If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further the loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, borrower has been seriously damaged.

## II.  **Predatory Lending**

      The office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in unfair and deceptive business practices. Some of those characteristics here include:

- Borrower was a minority, and/or elderly or disabled, and/or the transaction was conducted in a foreign language or otherwise incapable of being understood.[11]
- Other unfair, deceptive, or fraudulent practices in transaction.
- Mortgage broker and corresponding lender involved.

## III.  **Breach of Fiduciary Duty**

      Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e. duty of trust) is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

      The fiduciary duty of the broker, as agent for the lender, is the same—to deal with the consumer in good faith, educate the borrowers about loan programs, and other options available to the borrowers, perform their own due diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

      Here, the Borrower was placed into the current loan product without regard for the ability to repay, likely they would default or incur bankruptcy as a result of the loan, and it was reasonably foreseeable that such would occur.

---

[11] California Civil Code § 1632

In addition, the above-described acts were a violation of the implied covenant of good faith and fair dealing.

## VIOLATION OF CALIFORNIA CIVIL CODE

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender:

First, the law requires certain procedural safeguards to protect the borrower such as receipt of specific disclosure notices from the lender. Civil Code §§ 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

> *"NOTICE TO BORROWER, IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY..."*

This disclosure was not provided to the borrower at any time during the processing of the loan, nor was any alternative loan product offered to the borrowers.

Also, the lender must notify borrowers of any changes in the interest rate and monthly payment on a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and thus violated the law.

Additional violations of Civil Code §§ 1920-1921 have occurred: adjustment of rate did not take into consideration the ability of borrower to repay; change in rate was not reflected in security instrument; borrower was not provided notice of change of rate monthly; there was a prepayment penalty in the note; borrower was not adequately advised of negative amortization.

These Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## SECURITIZATION & MERS & QUALIFIED WRITTEN REQUESTS

Mortgage Electronic Registration Systems (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignments of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these Assignments. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS' "assigned officer" has a conflict of interest.

Since neither MERS nor the servicer has a beneficial interest in the Note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment executed by the MERS employee is illegal. The actual owner of the Note has not executed the assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the Note will result in a nullity.

It must also be noted that the lender or other holder of the Note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage Note, nor do they acquire any beneficial interest in the Note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

To the extent that this loan has been sold, transferred or assigned, this letter shall also serve as a Qualified Written Request ("QWR") pursuant to RESPA (12 USC § 2600 et seq.), for the following information:

1.    All documents which relate to the original loan transaction which is the subject of this request (hereinafter, "the transaction"), including but not limited to, loan application(s), good faith estimate(s), loan commitment letter(s), Truth in Lending Disclosure Statement(s), Notice(s) of Right to Cancel, HUD-1 or final settlement statement(s), promissory note or notes/agreement(s), mortgage(s)/deed(s) of trust.

2.    All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of the mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of the loan through the present date.

3.    All assignments, transfers, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment by me to the obligation in this account from the inception of the loan to the present date.

4.    All deeds in lieu, modifications to the mortgage, promissory note or deed of trust from the inception of the loan to the present date.

5.      Each and every canceled check, money order, draft, debit or credit notice, issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

6.      All escrow analyses conducted on the account from the inception of the loan to the date of this letter.

7.      Each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

8.      Copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by borrower(s) or by others on the account.

9.      All letters, statements and documents sent to borrower(s) by your company.

10.     All letters, statements and documents sent to borrower(s) by agents, attorneys or representatives of your company.

11.     All letters, statements and documents sent to borrower(s) by previous servicers, sub-servicers or others in your loan file or in your control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

12.     All letters, statements and documents contained in the loan file or imaged by you, any servicer or sub-servicers of the mortgage from inception of the loan to the present date.

13.     All electronic transfers, assignments, sales of the Note, mortgage, deed of trust or other security instrument.

14.     All agreements, contracts and understandings with vendors that have been paid for by any charge to the account of borrower(s) from the inception of the loan to the present date.

15.     All agreements, contracts and understandings between you and the loan originator for this transaction.

16.     All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers and documents that relate to the accounting of the loan from inception to the present date.

7

17.    All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from loan inception to the present date.

18.    All loan servicing agreements between the servicer(s) and the loan holder, lender, and/or trustees.

19.    Copies of all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, recourse agreements, mortgage insurance contracts and any agreement related to the loan from its inception through actual receipt of this communication; assumed to be three business days ahead of the date written above.

Further, please provide, in writing, the answers to the questions listed below.

1)    Please identify the name, address and telephone number of the current holder (or owner) of the Note.

2)    Please identify the name, address and telephone number of the current holder (or owner) of the mortgage (or deed of trust).

3)    Identify the name, address and telephone number of the mortgage broker involved in the transaction.

4)    Identify any and all fees or any "things of value" provided to mortgage broker in the transaction.

5)    Identify specifically how the "Annual Percentage Rate" and "Amount Financed" were calculated in connection with this loan.

6)    Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected/safeguarded.

7)    Where is the "original" promissory note or mortgage located? Please describe its physical location and anyone holding this Note as a custodian or trustee, if applicable.

8)    Where is the "original" deed of trust located? Please describe its physical location and anyone holding this deed of trust as a custodian or trustee, if applicable.

9)    Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool that the mortgage has been a part of from the inception of the mortgage to the present date.

10)    Have there been any "investors" who have participated in any mortgage-backed security (MBS), collateral mortgage obligation (CMO) or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the

mortgage loan to the present date? If yes, please identify the name and address of each and every individual, entity, organization or company.

11)    Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, mortgage insurance contracts, recourse agreements and any agreement related to the loan from its inception to the current date written above.

**Borrower hereby demands:**

- That, pursuant to the above regulations, lender shall rescind the loan made by defendants to secure the property and all security instruments in connection with those loans; and that all costs to acquire those loans plus all interest paid shall be refunded to borrower.

- That defendants will re-secure the property with a new loan at an amount equal to today's current market value, and with the terms that were originally disclosed, but at a payment not to exceed 28-31% of borrower's income as should have been done in the first place.

- That lender reimburse plaintiffs for all costs to resolve this matter, including but not limited to attorney's fees, investigation fees, audit(s) performed by third parties, expert witness consultations, and out-of-pocket costs and expenses, including travel and lodging expenses to meet and confer with mortgage and banking personnel and government regulatory officials and politicians to determine the breadth and scope of the injuries inflicted upon borrower in the perversion of the loan process.

- That lender pays damages in the amount of $100,000,000,000,000.00 to restore the class/borrower and any and all collateral foreclosed, plus treble damages.

- That lender pays damages in the amount of $100,000,000,000,000.00 to class/borrower for stress, harassment, threats, trespass, conversion, false imprisonment, intentional and negligent infliction of emotional distress, false credit reporting, and negative and detrimental libel and slander of borrower's character, plus trebled damages .

- That, pursuant to the requests above, a statutorily timely response to the request for documents and information is provided.

Demand is herewith made that all efforts at sale, eviction or foreclosure be stopped immediately as the property is scheduled for eviction or sale.

Furthermore, and in accordance with the Fair Credit Reporting Act, while this matter is in dispute, the lender must not report any negative information on this account

to any reporting agency and/or credit bureau(s), and that with resolution of this matter, the lender will report the account "paid as agreed" and will remove any derogatory information from their credit report, to include any foreclosure filings and other references to foreclosure.

If this does not immediately comport with your full understanding of this matter or you do not agree with this demand, you should so notify me [or my representative(s)] immediately via the most expedient means at your disposal directed to me at the collateral address noted at the beginning of this communication, in writing.

You have twenty (20) days from receipt of this letter to comply with these demands. Please govern yourselves accordingly; bearing in mind as paramount that time is of the essence.

We look forward to your timely compliance.

Most respectfully yours,

Marshall Sanders

10

Exhibit "D"

e World On Time.

Padded P K

Align bottom of Peel and Stick Airbill here.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Lydia O. Sanders 1621 Kensing Lane, Santa Ana, CA 92705-3074
*(from below) the Note and Deed of Trust became Void February 17, 2010 (Jesinoski, 574 US _ (2015), thus ...*

A true and correct copy of the foregoing document entitled (specify): Emergency Ex Parte Motion to Strike Any and All
Opposition to Debtor's Motion to Impose Stay as Time-Barred by This Court's Own ORDER Setting a Deadline for such
an Opposition, and that Deadline has been Ignored; Request for Sanctions; and Request for Judicial Notice of Debtor's
February 17, 2010 Exercise of His TILA Right of Rescission, and by that TILA Rescission, BY OPERATION OF LAW...*
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
07/01/2015____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

None shown, according to the PACER Service Center. Will check with Bankruptcy Court Clerk and amend if necessary.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date)___07/01/2015____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

Locke Lord, 300 S. Grand Avenue, Ste. 2600, Los Angeles, CA 90071-3194

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method
for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _07/01/2015____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Hon. Erithe A. Smith, 411 W. Fourth St., Suite 5040/Courtroom 5A, Santa Ana, CA 92701-4593 (5th Fl. bin outside
elevators)
Amrane Cohen, 770 The City Drive S., Ste., 8500, Orange, CA 92868-4958 (E-mail; fax; personal delivery)
U.S. Trustee, 411 W. Fourth St., Ste. 9041, Santa Ana, CA 92701-8000 (delivered personally to receptionist)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/01/2015 | Lydia O. Sanders | Lydia O. Sanders |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012 · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · **F 9013-3.1.PROOF.SERVICE**