ORIGINAL

Marshall Samuel Sanders
1621 Kensing Lane
Santa Ana, CA 92705-3074
Telephone: (714) 665-8012
Facsimile: (714) 665-8012
E-mail: marshallssanders@yahoo.com

**FILED**
JUL - 7 2015
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Marshall Samuel Sanders, In Pro Per

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

In Re:                                 ) Case No.: 8:15-bk-13011-ES
                                       )
                                       ) **REQUEST FOR ORDER**
                                       )
                                       )
Marshall Samuel Sanders,               )
                                       )
              Debtor.                  )
                                       )
                                       )

    Debtor respectfully requests that the Court ORDER the Orange County Recorder to record Debtor's Truth-in-Lending Act ("TILA") Rescission.

    The Orange County Recorder has refused to record Debtor's TILA Rescission.

    The California Public Records Act ("CPRA") permits recordation of interests in land.

    TILA Rescission affects an interest in land. The interest affected is the recorded Deed of Trust presently encumbering Debtor's title to his home at 1621 Kensing Lane, Santa Ana, CA 92705-3074, a Deed of Trust void by operation of law due to Debtor's TILA Rescission mailed February 17, 2010.

- 1 -
**REQUEST FOR ORDER**

Unless Debtor is permitted to record his TILA rescission, the public record will reflect a void security interest in Debtor's home. This would be in contravention of the purpose of California's public recording statute. That purpose is to accurately reflect interests in land. A void security interest does not reflect an interest in land but instead is a "wild" deed. This perverts the public records. Worse, it prevents Debtor here, from doing anything with his property, e.g., refinancing it, selling it, or doing just about anything else one might want to do with their property. Additionally, the void Deed of Trust generates "interest" in the foreclosure auction of Debtor's property, duping unsuspecting bidders.

But by far the worst thing that the void Deed of Trust does is allow "bank" to foreclose upon a void instrument. Since Debtor's home is unique, as is all real property, and irreplaceable, and also Debtor would be irreparably injured if his home were auctioned and he and his family evicted, and no amount of money could compensate for such a loss, Debtor, as a matter of right, is entitled to the ORDER requested herein, since without such an ORDER, Debtor's home will be forfeited and Debtor and his family evicted. This is a harsh result predicated upon a void security interest.

The world will never know that the security interest is void unless this Court tells the world so by ORDER to the Orange County Recorder to record Debtor's TILA Rescission.

The foreclosure auction is presently scheduled for July 16, 2015 of Debtor's family home, and nothing, including TILA Rescission is dissuading "bank" from foreclosing. Recordation of Debtor's TILA Rescission will at least fulfill the intent and purpose of the California Public Records Act and Public Policy by providing Notice to all, actual or constructive as the case may be, that the Deed of Trust is void by operation of law, and has been since February 17, 2010 (*Jesinoski v. Countrywide*, 574 US ___, 135 S. Ct. 790 (2015).)

1 | I declare under penalty of perjury under the laws of the State of California that the foregoing
2 | is true and correct.
3 |
4 | Executed on this 6th day of July 2015 in Santa Ana, California.

Marshall Samuel Sanders, Debtor

In Pro Per

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

1621 Kensing Lane
Santa Ana, CA 92705-3074

February 17, 2010

Countrywide Home Loans, Inc.
(Now known as: Bank of America)
400 Countrywide Way
**Simi Valley**, CA 93065-6298

Countrywide Bank, N.A.
1199 North Fairfax St., Ste. 500
Alexandria, VA 22314

Bank of America
Home Retention Department
475 Crosspoint Parkway
NY2-002-01-17
Getzville, NY 14068-1609

ReconTrust Company, N.A.
A Wholly-owned subsidiary of
Bank of America
1800 Tapo Canyon Rd.
CA6-914-01-94
**Simi Valley**, CA 93063-6712

ReconTrust Company, N.A.
225 West Hillcrest Drive
MSN TO-02
Thousand Oaks, CA 91360-7883

Wells Fargo
Wells Fargo Bank, N.A.,
As Trustee for Harborview Mortgage Loan,
Trust Mortgage Loan Pass-through Certificates, Series 2007-1
C/o BAC Home Loans Servicing, LP
Foreclosure Department
400 Countrywide Way, SV-35
**Simi Valley**, CA 93065-6298

MERS
Mortgage Electronic Registration Systems, Inc.
P.O. Box 2026
Flint, MI 48051-2026

1

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705

**Re:**	**DEMAND & NOTICE OF RESCISSION**
Property: 1621 Kensing Lane, Santa Ana, CA 92705-3074
Originating Loan No. 154127473 (Countrywide)

Dear Sir(s) and or Madame(s):

This correspondence will serve to memorialize my (hereinafter, "Borrower") dispute with the above-referenced mortgage loan by, through, originated, serviced or otherwise now in the hands of your office or under your dominion and control, and as Notice of my Intent to file legal action pursuant to the California Code of Civil Procedure within 30 days from this date.

Further, this correspondence will serve as notice to rescind the above-referenced mortgage loan based on your violations of each of the following federal and state laws, including, but not limited to, the Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA"), California Unfair/Deceptive Business Practices Act, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Civil Code §1688, and others.

Please be advised that the security interest in the above-referenced property is now void per this notice and you have 20 days to return all payments made on this loan and to do your part to terminate the security interest in the home. Upon compliance with the above, I, or my representative, will be contacting you to discuss the tender of the reduced payoff amount subject to offset for all damages and costs.

## VIOLATIONS OF TRUTH IN LENDING ACT (TILA)

The purpose of TILA is "to assure meaningful disclosure of credit terms to enable consumers to become informed about the cost of loans and to compare the credit options available to them." If the interest rate is not fixed, then the Truth in Lending Disclosure Statement must inform the borrower of the variable rate feature of the loan. Additionally, federal courts have held that "a misleading disclosure is as much a violation of TILA as a failure to disclose at all."[1]

- Did not deliver good faith estimates of disclosures (preliminary TILDS) within 3 days of loan application.[2]
- Did not provide 2 copies of the completed Right to Cancel.[3]
- The Truth in Lending Disclosure was not provided.[4]

---

[1] *Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1980) and *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 174 (1st Cir. 2004) (quoting *Smith v. Chapman*).
[2] 12 C.F.R. §§ 226.19(a)
[3] 12 C.F.R. §§ 226.23(b)
[4] 12 C.F.R. §§ 226.17, 226.18

2

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

- Hazard insurance disclosure was not provided.[5]

- "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) was not provided within 3 days of application.[6]

Each of these violations is subject to civil remedies in law and equity, in addition to the recovery of attorney's fees and costs of litigation.

## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

There is no evidence to confirm that the borrower received all of the disclosures mandated by law. The transfer servicing disclosure special information booklet and affiliated business agreement disclosures do not appear to have been received by the borrower.

- Did not disclose all affiliated business arrangements.[7]
- HUD-1 was not provided at closing (or 1 day before if requested) and accurate.[8]
- Transfer servicing disclosure was not provided at or prior to closing.[9]

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE[10], BREACH OF FIDUCIARY DUTY, AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. Here, numerous violations of the CA B&P Code have occurred.

I. **Underwriting Standards Were Ignored; Borrower Qualification based on Value of Collateral, rather than Ability to Repay the Loan**

The purpose of an underwriter is to determine whether the borrower can qualify for a loan and if the borrower has the ability to repay the loan. This determination of the ability to repay a loan is based upon employment and income in large measure, proved by

---

[5] 12 C.F.R. § 226.4(d)(2)
[6] 12 C.F.R. § 226.19(b)
[7] 24 C.F.R. § 3500.15
[8] 24 C.F.R. § 3500.8(b)
[9] 24 C.F.R. § 3500.21
[10] As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1(commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code: Violations of specific code sections 10240-10248.3; 10241.

3

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705

getting pay stubs, 1040s, W-2's, and a Verification of Employment and Income on the borrowers.

If an underwriter has evaluated the loan properly, then there should be no question of the ability of the borrower to repay the loan. Debt ratios will have been evaluated, credit reviewed and a proper determination of risk should have been made in relation to the loan amount. Approvals and denials would be made based upon a realistic likelihood of repayment.

If the underwriter had performed his/her duties accordingly, he/she would have declined this loan due to the inability of the borrower to pay. Further the loan was a stated income loan and was apparently underwritten with an automated underwriting system which is merely intended to be a guide or a preliminary approval system. The underwriter failed to properly examine this loan, and as a result, borrower has been seriously damaged.

## II. Predatory Lending

The office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in unfair and deceptive business practices. Some of those characteristics here include:

- Borrower was a minority, and/or elderly or disabled, and/or the transaction was conducted in a foreign language or otherwise incapable of being understood.[11]
- Other unfair, deceptive, or fraudulent practices in transaction.
- Mortgage broker and corresponding lender involved.

## III. Breach of Fiduciary Duty

Both lender and broker have a fiduciary responsibility to the borrower. The fiduciary duty of the broker (i.e. duty of trust) is to deal with the consumer in good faith. If the broker knew or should have known that the borrower will or has a likelihood of defaulting on this loan, he/she had a fiduciary duty to the borrower to not place them in that loan (in harm's way).

The fiduciary duty of the broker, as agent for the lender, is the same—to deal with the consumer in good faith, educate the borrowers about loan programs, and other options available to the borrowers, perform their own due diligence to determine if the borrowers are being placed in a loan that is legal, properly disclosed, is the best loan for the borrower given their financial circumstance, and is affordable over the life of the loan.

Here, the Borrower was placed into the current loan product without regard for the ability to repay, likely they would default or incur bankruptcy as a result of the loan, and it was reasonably foreseeable that such would occur.

---

[11] California Civil Code § 1632

4

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

In addition, the above-described acts were a violation of the implied covenant of good faith and fair dealing.

## VIOLATION OF CALIFORNIA CIVIL CODE

The California Civil Code has certain provisions that are intended to protect borrowers when attempting to procure a loan from a financial institution or lender:

First, the law requires certain procedural safeguards to protect the borrower such as receipt of specific disclosure notices from the lender. Civil Code §§ 1916.5 and 1916.7. An applicant for a loan pursuant to the provisions of this section must be given a disclosure notice in the following form:

*"NOTICE TO BORROWER, IMPORTANT INFORMATION ABOUT THE ADJUSTABLE PAYMENT, ADJUSTABLE-RATE LOAN. PLEASE READ CAREFULLY..."*

This disclosure <u>was not provided</u> to the borrower at any time during the processing of the loan, nor was <u>any alternative loan product</u> offered to the borrowers.

Also, the lender must notify borrowers of any changes in the interest rate and monthly payment on a loan. The fully amortized rate changes monthly, so the borrower should be notified monthly, in accordance with the above statute. Lender has failed to do so and thus violated the law.

Additional violations of Civil Code §§ 1920-1921 have occurred: adjustment of rate did not take into consideration the ability of borrower to repay; change in rate was not reflected in security instrument; borrower was not provided notice of change of rate monthly; there was a prepayment penalty in the note; borrower was not adequately advised of negative amortization.

These Civil Code violations carry with them damages, attorney's fees, costs of suit, and other legal and equitable relief.

## SECURITIZATION & MERS & QUALIFIED WRITTEN REQUESTS

Mortgage Electronic Registration Systems (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignments of mortgages, with the idea that MERS would be the mortgagee of record. This would allow "MERS" to foreclose on the property, and at the same time, assist the lenders in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved the lenders money in manpower and the costs of recording these Assignments. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS' "assigned officer" has a conflict of interest.

Since neither MERS nor the servicer has a beneficial interest in the Note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the assignment in the name of MERS, the assignment executed by the MERS employee is illegal. The actual owner of the Note has not executed the assignment to the new party. An assignment of a mortgage in the absence of the assignment and physical delivery of the Note will result in a nullity.

It must also be noted that the lender or other holder of the Note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage Note, nor do they acquire any beneficial interest in the Note.

The existence of MERS constitutes numerous violations of the California Business and Professions Code, as well as Unfair and Deceptive Acts and Practices, due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices was intentionally designed to mislead the borrower and benefit the lenders.

To the extent that this loan has been sold, transferred or assigned, this letter shall also serve as a Qualified Written Request ("QWR") pursuant to RESPA (12 USC § 2600 et seq.), for the following information:

1. All documents which relate to the original loan transaction which is the subject of this request (hereinafter, "the transaction"), including but not limited to, loan application(s), good faith estimate(s), loan commitment letter(s), Truth in Lending Disclosure Statement(s), Notice(s) of Right to Cancel, HUD-1 or final settlement statement(s), promissory note or notes/agreement(s), mortgage(s)/deed(s) of trust.

2. All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of the mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government-sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to the mortgage, promissory note and deed of trust from the inception of the loan through the present date.

3. All assignments, transfers, or other documents evidencing a transfer, sale or assignment of the mortgage, deed of trust, promissory note or other document that secures payment by me to the obligation in this account from the inception of the loan to the present date.

4. All deeds in lieu, modifications to the mortgage, promissory note or deed of trust from the inception of the loan to the present date.

6

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

5. Each and every canceled check, money order, draft, debit or credit notice, issued to any servicer of the account for payment of any monthly payment, other payment, escrow charge, fee or expense on the account.

6. All escrow analyses conducted on the account from the inception of the loan to the date of this letter.

7. Each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on the disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney's fees, points, etc.

8. Copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by borrower(s) or by others on the account.

9. All letters, statements and documents sent to borrower(s) by your company.

10. All letters, statements and documents sent to borrower(s) by agents, attorneys or representatives of your company.

11. All letters, statements and documents sent to borrower(s) by previous servicers, sub-servicers or others in your loan file or in your control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

12. All letters, statements and documents contained in the loan file or imaged by you, any servicer or sub-servicers of the mortgage from inception of the loan to the present date.

13. All electronic transfers, assignments, sales of the Note, mortgage, deed of trust or other security instrument.

14. All agreements, contracts and understandings with vendors that have been paid for by any charge to the account of borrower(s) from the inception of the loan to the present date.

15. All agreements, contracts and understandings between you and the loan originator for this transaction.

16. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers and documents that relate to the accounting of the loan from inception to the present date.

7

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

17. All loan servicing transaction records, ledgers, registers and similar items detailing how the loan has been serviced from loan inception to the present date.

18. All loan servicing agreements between the servicer(s) and the loan holder, lender, and/or trustees.

19. Copies of all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, recourse agreements, mortgage insurance contracts and any agreement related to the loan from its inception through actual receipt of this communication; assumed to be three business days ahead of the date written above.

Further, please provide, in writing, the answers to the questions listed below.

1) Please identify the name, address and telephone number of the current holder (or owner) of the Note.

2) Please identify the name, address and telephone number of the current holder (or owner) of the mortgage (or deed of trust).

3) Identify the name, address and telephone number of the mortgage broker involved in the transaction.

4) Identify any and all fees or any "things of value" provided to mortgage broker in the transaction.

5) Identify specifically how the "Annual Percentage Rate" and "Amount Financed" were calculated in connection with this loan.

6) Please identify where the originals of the entire loan file are currently located and how they are being stored, kept and protected/safeguarded.

7) Where is the "original" promissory note or mortgage located? Please describe its physical location and anyone holding this Note as a custodian or trustee, if applicable.

8) Where is the "original" deed of trust located? Please describe its physical location and anyone holding this deed of trust as a custodian or trustee, if applicable.

9) Has the mortgage loan been made a part of any mortgage pool since the inception of the loan? If yes, please identify each and every loan mortgage pool that the mortgage has been a part of from the inception of the mortgage to the present date.

10) Have there been any "investors" who have participated in any mortgage-backed security (MBS), collateral mortgage obligation (CMO) or other mortgage security instrument that the mortgage loan has ever been a part of from the inception of the

Recording requested by: Marshall S. & Lydia O. Sanders, Trustees |
When recorded mail to: 1621 Kensing Lane, Santa Ana, CA 92705 |

mortgage loan to the present date? If yes, please identify the name and address of each and every individual, entity, organization or company.

11)    Please identify the parties and their addresses to all sales contracts, servicing agreements, assignments, transfers, indemnification agreements, mortgage insurance contracts, recourse agreements and any agreement related to the loan from its inception to the current date written above.

**<u>Borrower hereby demands:</u>**

- That, pursuant to the above regulations, lender shall rescind the loan made by defendants to secure the property and all security instruments in connection with those loans; and that all costs to acquire those loans plus all interest paid shall be refunded to borrower.

- That defendants will re-secure the property with a new loan at an amount equal to today's current market value, and with the terms that were originally disclosed, but at a payment not to exceed 28-31% of borrower's income as should have been done in the first place.

- That lender reimburse plaintiffs for all costs to resolve this matter, including but not limited to attorney's fees, investigation fees, audit(s) performed by third parties, expert witness consultations, and out-of-pocket costs and expenses, including travel and lodging expenses to meet and confer with mortgage and banking personnel and government regulatory officials and politicians to determine the breadth and scope of the injuries inflicted upon borrower in the perversion of the loan process.

- That lender pays damages in the amount of $100,000,000,000,000.00 to restore the class/borrower and any and all collateral foreclosed, plus treble damages.

- That lender pays damages in the amount of $100,000,000,000,000.00 to class/borrower for stress, harassment, threats, trespass, conversion, false imprisonment, intentional and negligent infliction of emotional distress, false credit reporting, and negative and detrimental libel and slander of borrower's character, plus trebled damages .

- That, pursuant to the requests above, a statutorily timely response to the request for documents and information is provided.

Demand is herewith made that all efforts at sale, eviction or foreclosure be stopped immediately as the property is scheduled for eviction or sale.

Furthermore, and in accordance with the Fair Credit Reporting Act, while this matter is in dispute, the lender must not report any negative information on this account

9

to any reporting agency and/or credit bureau(s), and that with resolution of this matter, the lender will report the account "paid as agreed" and will remove any derogatory information from their credit report, to include any foreclosure filings and other references to foreclosure.

If this does not immediately comport with your full understanding of this matter or you do not agree with this demand, you should so notify me [or my representative(s)] immediately via the most expedient means at your disposal directed to me at the collateral address noted at the beginning of this communication, in writing.

You have twenty (20) days from receipt of this letter to comply with these demands. Please govern yourselves accordingly; bearing in mind as paramount that time is of the essence.

We look forward to your timely compliance.

Most respectfully yours,

Marshall Sanders                                      Trustee

10

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California  )
County of Orange  )

On 6/26/15 before me, AZADEH VARJAN notary public
Date    Here Insert Name and Title of the Officer

personally appeared Marshall Sanders
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

AZADEH VARJAN
Commission # 2070251
Notary Public - California
Orange County
My Comm. Expires Jun 25, 2018

Signature _____
Signature of Notary Public

Place Notary Seal Above

———— OPTIONAL ————
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: 1621 Keng Ln, Santa Ana CA    Document Date: _____
Number of Pages: _____    Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

## COMPLETE LEGAL DESCRIPTION

The estate or interest in the land hereinafter described or referred to is a **Fee Simple Absolute** as to Parcel 1; and an easement as to Parcels 2 and 3.

Title to said estate or interest is vested in Marshall S. Sanders and Lydia O. Sanders, Trustees of the Marshall and Lydia Sanders Trust dated April 20, 1990.

The land referred to in this complete legal description is situated in the Unincorporated Area of the County of Orange ("Lemon Heights"), State of California, and is described as follows:

Parcel 1:

That portion of Block 14, Irvine's Subdivision as shown on a Map recorded in Book 1, Page 88 of Miscellaneous Maps, records of said County, described as follows:

Beginning at the most Southerly corner of Lot 350 of said Block 14, said corner being also the intersection of the center lines of La Loma drive and Red Hill Avenue, as shown on a Map filed in Book 30, Page 48 of record of surveys in the Office of the recorder of said County; thence along said center line of La Loma Drive, South 50° 13' 59" East 516.35 feet; thence North 39o 48' 03" East 416.52 feet; South 53° 42' 59" East 72.51 feet to the true point of beginning; North 39° 48' 03" East 241.92 feet to the Southwesterly line of Lot "A" of Tract No. 61, as shown on a Map thereof recorded in Book 10, Page 5 of Miscellaneous Maps, records of said County; thence along said Southwesterly line; South 50° 03' 00" East 177.63 feet to the most Northerly corner of the land described in deed to Elwood H. Bear and others, recorded March 21, 1923 in Book 462, Page 12 of Deeds; thence along the Northwesterly line of the land described in said deed, South 39o 48' 03" West 239.54 feet to the most Easterly corner of the land described in deed to Merton D. Butler and wife, recorded June 10, 1957 in Book 3935, Page 462 of Official Records; thence along the Northeasterly line of the land described in said deed, North 53° 42' 59" West 177.96 feet to an angle point therein; thence North 39° 48' 03" East 9.00 feet to the true point of beginning.

Parcel 2:

A non-exclusive easement for road purposes for ingress and egress to and from the property described in Parcel 1, said easement being 18 feet in width, over that certain portion of Block 14, Irvine's Subdivisions as shown on a Map recorded in Book 1, Page 88 of Miscellaneous Maps, in the Office of the recorder, County of Orange, State of California, described as follows:

Beginning at the most Southerly corner of Lot 350 of said above-mentioned Block 14, said corner being also the intersection of the center line of La Loma Drive and Red Hill Avenue; thence along the Southeasterly line of said Lot 350, North 39° 51' 04" East, 30.00 feet to the true point of beginning; thence continuing along said Southeasterly line of said Lot 350, North 39° 51' 04" East 132.33 feet; thence leaving said Southeasterly

line, South 87° 09' 15" East 419.85 feet; thence South 53°42'59" East 253.00 feet;; thence South 36° 17' 01" West at right angles to said last mentioned course; 18.00 feet; thence North 53° 42' 59" West at right angles to said last mentioned course 247.60 feet; thence North 87° 09' 15" West 405.47 feet; thence parallel with said Southeasterly line of Lot 350, South 39° 51' 04" West 123.33 feet; thence North 50° 13' 59" West 18.00 feet to the true point of beginning.

Parcel 3:

A non-exclusive right of way for pipe lines together with the right to convey water through the same and the right to use, repair, maintain and replace the existing pipe line and right of way for other public utility purposes, in, over, along and across the following described strip;

A portion of Block 14 of Irvine's Subdivision, as shown on a Map recorded in Book 1, Page 88 of Miscellaneous Maps, records of Orange County, California, described as follows:

Beginning at the most Southerly corner of the tract of land conveyed to Elwood H. Bear and other by deed recorded March 21, 1923 in Book 463, Page 12 of Deeds; thence North 53° 42' West along the Southwesterly line of said tract of land, 189.73 feet to the most Westerly corner of said tract of land; thence Southwesterly to the most Northerly corner of the tract of land conveyed to M. B. Wellington and wife, by deed recorded February 28, 1936 in Book 809, Page 195 of Official Records; thence South 53° 42' East along the Northeasterly line of said tract of land conveyed to M. B. Wellington and wife and the Southeasterly extension thereof, a distance of 189.73 feet to the Northeasterly corner of the tract of land conveyed to M. B. Wellington and wife by deed recorded August 9, 1927 in Book 77, Page 33 of Official Records; thence Northeasterly to the point of beginning.

Assessor's Parcel Number: 502-081-13

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1621 Kensing Lane, Santa Ana, CA 92705-3074

A true and correct copy of the foregoing document entitled REQUEST FOR ORDER; [PROPOSED] ORDER and this Proof of Service will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below: No access.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Erithe Smith, 411 W. Fourth St., Courtroom 5A/Ste. 5040, Santa Ana, CA 92701-4500 (5th fl. bin outside elevators)
U.S. Trustee, 411 W. Fourth St., Ste. 9041, Santa Ana, CA 92701, Pers. Delv'y Recep. & nancy.goldenberg@usdoj.gov
Amrane Cohen, Chapter 13 Trustee, 770 The City Drive S., Ste. 8500, Orange, CA 92868-4958 (e-file)
Locke Lord 300 S. Grand Ave.,Ste 2600, Los Angeles, CA 90071-3194:csison@lockelord.com;sdelrahim@lockelord.com
Bank of America/Countrywide, 100 N. Tryon St., Charlotte, NC 28202 (Bankruptcy Fax (800) 520-5019)
LBSFCU, P.O. Box 4860, Long Beach, CA 90804, T: (714) 893-5111; (jflores@lbsfcu.org; jkuecks@lbsfcu.org)
IRS, POB 7346, Phila., PA, Fax (855) 383-8816
SunTrust Bank, POB 85092, Richmond, VA 23286, Ashley Carter, BK Specialist: T: (800) 635-3112; F: (804) 291-3169

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/6/15 | Lydia O. Sanders | *Lydia O. Sanders* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                       F 9013-3.1.PROOF.SERVICE